## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Bix Produce Company, LLC,                             Civil No. 05-1914 (DWF/SRN)

               Plaintiff,

                                                 **MEMORANDUM**
                                   **OPINION AND ORDER**

Bilimbi Bay Minnesota, LLC, d/b/a
Bilimbi Bay, and F. Lamar Hamilton,

               Defendants.

---

Andy L. Bond, Esq., Bond Law Office, counsel for Plaintiff.

C. John Jossart, Esq. and John Harper, III, Esq., Krass Monroe, PA, counsel for
Defendants.

---

This matter came before the Court on June 30, 2006, pursuant to Bilimbi Bay

Minnesota, LLC, d/b/a Bilimbi Bay, ("Bilimbi Bay") and F. Lamar Hamilton's Motion

for Summary Judgment. For the reasons set forth below, the Court denies the motion.

## BACKGROUND

Bix Produce Company, LLC ("Bix") is a wholesaler of produce and non-produce

goods in Minnesota, and it is licensed under the Perishable Agricultural Commodities Act

("PACA"), 7 U.S.C. § 499a-t (2000). Hamilton is the former chief manager and

president of Bilimbi Bay, which used to operate at least three restaurants in the

Minneapolis/Saint Paul metropolitan area.

On June 12, 2006, Bix filed a Complaint in this Court, alleging that Bilimbi Bay failed to pay $31,937.69 for produce goods and $9,047.07 for non-produce goods that Bix sold Bilimbi Bay in May 2005.  The Complaint contains four counts:  (1) failure to pay trust funds as required under PACA; (2) breach of contract for failure to pay for goods sold; (3) unlawful dissipation of trust assets by a corporate officer under PACA; and (4) claim for interest and attorney fees.  After the parties completed all of their discovery as required by the Pretrial Scheduling Order, Bilimbi Bay and Hamilton filed a summary judgment motion, contending that Counts 1 and 3 should be dismissed because PACA does not apply to Bilimbi Bay or Hamilton and asking that the remaining state-law claims be dismissed for lack of subject matter jurisdiction.

## DISCUSSION

### I.    Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The Court must view the evidence and the inferences, which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  *Enterprise Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996).  Howe ver, as the United States Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II.   PACA

PACA was enacted in 1930 to regulate the sale of perishable commodities and to protect small farmers and growers from "financially irresponsible and unscrupulous brokers in perishable commodities." *In re Lombardo Fruit and Produce Co.*, 12 F.3d 110, 112 (8th Cir. 1993). Because sellers of fresh produce were unsecured creditors and had no protection from produce buyers' practice of granting lending institutions security interests in their accounts receivable, Congress amended PACA in 1984 to require commission merchants, dealers, and brokers to hold any receivables or proceeds from the sale of perishable agricultural commodities in trust for the benefit of unpaid suppliers, sellers, or agents of such commodities until full payment is made to the seller. *Id.*; 7 U.S.C. § 499e(c)(1) and (2). A commission merchant, dealer, or broker violates PACA if it fails to maintain a trust as required by § 499e(c). 7 U.S.C. § 499b(4).

The parties agree that to recover the proceeds from a PACA-created trust, a plaintiff must demonstrate five factors: (1) the commodities sold were perishable

agricultural commodities; (2) the purchaser of the perishable agricultural commodities was a commission merchant, dealer or broker; (3) the transaction occurred in interstate or foreign commerce; (4) the seller has not received full payment on the transaction; and (5) the seller preserved its trust rights by giving written notice to the purchaser within the time provided by the law.  7 U.S.C. § 499e; *see also A & J Produce Corp. v. Chang*, 385 F. Supp. 2d 354, 358 (S.D.N.Y. 2005) (delineating the five factors).

In this case, the parties do not dispute that the $31,937.69 at issue was for perishable agricultural commodities or that the transaction involved interstate or foreign commerce.  In addition, Bix's failure to receive full payment and whether Bix preserved its rights to the trust are not in dispute for the present motion.  Accordingly, the second factor is the only one now in dispute.

### A.    Was Bilimbi Bay a Dealer under PACA?

The first issue before the Court is whether Bilimbi Bay is a dealer under PACA.[1] Section 499a(b)(6) defines a dealer as "any person engaged in the business of buying or selling in wholesale or jobbing quantities, as defined by the Secretary [of Agricultural], any perishable agricultural commodity in interstate or foreign commerce."  7 U.S.C. § 499a(b)(6).    The term "person" includes individuals, partnerships, corporations, and associations, 7 U.S.C. § 499a(b)(1), and a restaurant can be "engaged in the business of buying or selling . . . any perishable agricultural commodity."  *In re Old Fashioned Enterprises, Inc.*, 236 F.3d 422, 426 (8th Cir. 2001).  Wholesale or jobbing quantities are defined as "aggregate quantities of all types of produce totaling one ton (2,000 pounds) or

---

[1]    Bix does not allege that Bilimbi Bay was a commission merchant or a broker.

more in weight in any day shipped, received, or contracted to be shipped or received."
7 C.F.R. §46.2(x).   The dispute here is whether Bilimbi Bay purchased produce from Bix
in wholesale or jobbing quantities.  As the plaintiff, Bix bears the burden of proof.  *See A
& J Produce*, 385 F. Supp. 2d at 360.

Bix contends that Bilimbi Bay is a dealer because it purchased more than 2,000
pounds of produce from Bix on July 3, 2004.  To support this assertion, Bix relies on the
Affidavit of Lisa DeFrance, Bix's credit manager who is also responsible for verifying
the weight of produce shipped and received, and on three invoices dated July 3, 2004.
Although the three invoices are for both produce and non-produce, the majority of the
items invoiced are for produce items that were shipped to Bilimbi Bay's Uptown,
Apple Valley, and Eden Prairie locations.   Each of the invoices has a box at the bottom
labeled "ship weight," and the ship weight for the three invoices totals 3,518 pounds.
Relying on *Chet & Leo Produce Co. v. Cassandra, LLC*, 2005 WL 1514093 (N.D. Cal.
June 21, 2005), Bilimbi Bay argues that this information is insufficient to withstand
summary judgment because DeFrance's affidavit is conclusory in that it does not discuss
the boxes labeled ship weight and because she avers that Bix shipped 3,287 pounds, as
opposed to 3,518 pounds, of produce to Bilimbi Bay on July 3, 2004.

Bilimbi Bay's reliance on *Chet* is misplaced.  In that case, the plaintiff, like Bix,
produced invoices and a declaration to establish that the defendant was a dealer under
PACA.  *Chet*, 2005 WL 1514093 at *4.  To rebut that evidence, the defendant submitted
two declarations in which the owners of the defendant restaurant declared that they had
never purchased 2,000 pounds of produce in a single day.  *Id*.  Moreover, in response to a

5

direct question from the court, defendant's counsel represented that the defendant had not purchased produce in wholesale or jobbing quantities.  *Id*.

In contrast, Bilimbi Bay's only evidence to rebut Bix's evidence is Hamilton's affidavit, in which he avers "upon information and belief" that Bilimbi Bay "never contracted for, purchased, or received 2,000 pounds or more of aggregate produce on any one day for its metropolitan area restaurants."  (Hamilton Aff. ¶ 3.)  Hamilton made this statement after reviewing Bix's invoices for the "three-month period prior to cessation of business."  (*Id*.)  The record does not indicate when Bilimbi Bay ceased operations. When the Court asked Bilimbi Bay and Hamilton's counsel about the "upon information and belief" statement, counsel explained that Hamilton believed his statement was accurate based on his review of the invoices, but, because Hamilton was not in charge of the day-to-day ordering and receiving of shipments from Bix, Hamilton was not comfortable attesting to the statement without the qualifying language.

The Court appreciates Hamilton's position.  However, affidavits based upon "information and belief" are insufficient as a matter of law to support a summary judgment motion.  *See e.g., Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 635 n.20 (8th Cir. 2000).  Rule 56 requires that affidavits supporting a summary judgment motion be made only upon "personal knowledge," setting forth "facts" that are "admissible in evidence" and showing that the "affiant is competent to testify to the matters" at trial. Fed. R. Civ. P. 56(e).  Because Hamilton's affidavit does not comply with Rule 56(e), it cannot be considered for this motion.  *Stuart*, 217 F.3d at 635 n.20.  Therefore, viewing the remaining evidence in the light most favorable to Bix, a reasonable fact finder could

conclude that Bilimbi Bay purchased aggregate quantities of perishable agricultural commodities totaling 2,000 pounds or more in weight in any one day.  As such, there is a genuine issue of material fact with respect to whether Bilibmi Bay is a dealer as defined by section 499a(b)(6) of PACA.

### B.    Must Bilibmi Bay Purchase $230,000 Annually?

Section 499a(b)(6) contains three exceptions to the definition of dealer:

> [A] "dealer" [is] any person engaged in the business of buying or selling in wholesale or jobbing quantities . . . except that (A) no producer shall be considered as a "dealer" in respect to sales of any such commodity of his own raising; (B) no person buying any such commodity solely for sale at retail shall be considered as a "dealer" until the invoice cost of his purchases of perishable agricultural commodities in any calendar year are in excess of $230,000; and (C) no person buying any commodity other than potatoes for canning and/or processing within the State where grown shall be considered a "dealer" whether or not the canned or processed product is to be shipped in interstate or foreign commerce, unless such product is frozen or packed in ice, or consists of cherries in brine . . .

7 U.S.C. § 499a(b)(6).  The parties agree that exception (B) is the only one at issue in this case.  Specifically, assuming it purchased the wholesale or jobbing quantities of perishable agricultural commodities, Bilimbi Bay argues that it is not a dealer because it did not purchase more than $230,000 of perishable agricultural commodities in any calendar year.  In response, Bix asserts that exception (B) does not apply because Bilimbi Bay did not purchase any perishable commodities "solely for sale at retail."

Few cases have directly addressed this issue.  In *J. Ambrogi Food Distribution v. Top Dog America's Bar & Grille of PA, Inc.*, 2005 WL 1655891 (E.D. Pa. July 14, 2005), the court noted that the issue was novel for the courts in the Third Circuit and explained that the issue "necessarily depends upon whether a restaurant that

purchases wholesale or jobbing quantities of produce can be considered to buy such commodities 'soley for sale at retail.'" *J. Ambrogi*, 2005 WL 1655891 at * 3.  The court then discussed the Third Circuit Court of Appeal's decision in *In re Magic Restaurants, Inc.*, 205 F.3d 108 (3d Cir. 2000), a case involving a restaurant purchasing wholesale or jobbing quantities of produce in excess of $230,000 a year.

The issue in *Magic Restaurants* was whether a restaurant "with extensive operations" could be a dealer under PACA.  *Magic Restaurants*, 205 F.3d at 114.  The court expressly stated that the three exceptions to section 499a(b)(6) were not at issue in the case.  *Id*. at 115.  The Third Circuit examined the statutory definition of dealer, the United States Department of Agriculture's long-standing view that restaurants were not dealers, and the legislative history and statutory purpose of the PACA.  *Id*. at 114-117.  After doing so, it concluded that "[w]e are constrained by PACA's unambiguous statutory language to hold that a restaurant such as Magic, which purchases produce in wholesale or jobbing quantities (and in excess of $230,000 per year), is a 'dealer' under 7 U.S.C. § 499a(b)(6)."  *Id*. at 117.

Based on the "extensive operations" language and the parenthetical concerning the $230,000, the *J. Ambrogi* court concluded the *Magic Restaurants* opinion instructs that "the monetary amount of agricultural commodities purchased by a restaurant in a given year must be considered in conjunction with the physical weight of produce purchased in determining whether a restaurant is considered a dealer under PACA."  *J. Ambrogi*, 2005 WL 1655891 at *4.  Because the defendant restaurant purchased less than $230,000

annually in perishable agricultural commodities, the court held that the defendant was not a dealer under PACA.  *Id*. at * 5.

The Eighth Circuit Court of Appeals has not spoken directly to this issue.  It has, however, addressed the issue of whether a restaurant, which purchased more than $230,000 of perishable agricultural commodities per year, is a dealer under section 499a(b)(6).  *See Old Fashioned*, 236 F.3d at 426.  In *Old Fashioned*, the $230,000 exemption in section 499a(b)(6) was not at issue; rather, the focus of the opinion was on whether a restaurant could be a dealer under PACA.  The Eighth Circuit summarized the definition of a dealer found in section 499a(b)(6):  "a dealer is 'any person engaged in the business of buying or selling in wholesale or jobbing quantities, as defined by the Secretary, any perishable agricultural commodity in interstate or foreign commerce,' provided that purchases exceed $230,000 a year."  *Id*. at 425.  The court examined the individual terms in the dealer definition and concluded that the statute is unambiguous.  *Id*. at 426.  Then, it quoted the holding of the *Magic Restaurants* opinion:  "'[the court was] constrained by PACA's unambiguous statutory language to hold that a restaurant . . . [that] purchases produce in wholesale or jobbing quantities (and in excess of $230,000 per year) is a 'dealer' under 7 U.S.C. § 499a(b)(6).'"  *Id*. at 426.  The Eighth Circuit concluded "[w]e find the [*Magic Restaurants]* court's reasoning persuasive and adopt it."  *Id*.

Bilimbi Bay asserts that the Eighth Circuit announced a two-prong test in *Old Fashioned* for determining whether a restaurant is a dealer under section 499a(b)(6): first, whether the entity purchases wholesale or jobbing quantities and second, whether

the entity purchases more than $230,000 in one year.  In response, Bix contends that a plain reading of the statutory language reveals that the exception applies only to persons buying commodities "solely for sale at retail."  *See e.g.*, *In re Reservoir Dogs*, *Inc.*, 2001 WL 1846860 (N.D. Ill. Sept. 27, 2001), *vacated on other grounds*, 2002 WL 32963984 (7th Cir. Apr. 15, 2002) (determining that the $230,000 exception did not apply to a restaurant because it did not sell perishable agricultural commodities at retail).   Bix argues that Bilimbi Bay does not fall into exception (B) because it sells prepared food, not perishable agricultural commodities, at retail.

Although Bix's argument finds some support in the plain reading of the statute, the Court finds that the *Old Fashioned* opinion counsels against such an interpretation. Instead, the opinion instructs that the amount of perishable agricultural commodities a restaurant purchases per year must be considered when determining whether a restaurant is a dealer under PACA and that only restaurants purchasing more than $230,000 a year fall within the parameters of PACA.

Bilimbi Bay argues that it is not a dealer because, based on its "uncontradicted evidence,"  Bix cannot establish that Bilimbi Bay purchased more than $230,000 of perishable agricultural commodities in any calendar year.  Bilimbi Bay's uncontradicted evidence is Hamilton's affidavit, in which he states "[u]pon information and belief, the invoice cost of all produce that Bilimbi Bay collectively purchased for its metropolitan area restaurant locations during any calendar year never exceeded $230,000.00." (Hamilton Aff. ¶ 4.)  As discussed above, Hamilton's affidavit does not comply with Rule 56(e).  Given this, there is a genuine issue of material fact with respect to whether

Bilimbi Bay purchased more than $230,000 of perishable agricultural commodities in any calendar year.  Accordingly, the Court denies the Motion for Summary Judgment with respect to the PACA claim against Bilimbi Bay.

### C.     Is Hamilton Subject to Liability Under PACA?

As noted above, PACA requires commission merchants, dealers, and brokers to hold proceeds from the sale of perishable agricultural commodities in trust for the benefit of unpaid suppliers, sellers, or agents of such commodities.  7 U.S.C. § 499e(c)(1) and (2).   PACA is silent with respect to whether an individual can be held liable under PACA for failure to maintain the required trust, and the Eighth Circuit has not addressed the issue.  However, under common law breach of trust principles, the majority courts that have addressed this issue have held that PACA imposes individual liability on corporate officers, shareholders, or other persons in position to control the trust assets for repayment of amounts due to the supplier.  *See Top Banana, LLC v. Dom's Wholesale & Retail Center, Inc.*, 2005 WL 1149774 at * 5-6 (S.D.N.Y. May 16, 2005) (listing cases).

Relying on *Farm-Wey Produce, Inc. v. Wayne L. Bowman Co., Inc.,* 973 F. Supp. 778 (E.D. Tenn. 1997), Bilimbi Bay argues that Hamilton has no personal liability under PACA for failure to maintain the PACA trust.  The holding in *Farm-Wey*, however, is against the weight of authority on this issue.  *See Consumer Produce Co., Inc. v. M & T Chirico, Inc.*, 2005 WL 2420355 (W.D.N.Y. Sept. 30, 2005) (discussing change in case law since *Farm-Wey*).   Given this and the fact that Hamilton was the chief manager and president of Bilimbi Bay, the Court finds that genuine issues of material fact exist with respect to whether Hamilton was in a position of control of the

PACA trust assets.  Accordingly, the Court denies the Motion for Summary Judgment with respect to the PACA claim against Hamilton.

### III.  Supplemental Jurisdiction

Given the Court's ruling on the PACA-related claims, the Court will retain jurisdiction over the state-law claims because district courts "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).

## CONCLUSION

For the reasons stated above, **IT IS HEREBY ORDERED THAT**:

1.     Bilimbi Bay Minnesota, LLC and F. Lamar Hamilton's Motion for Summary Judgment (Doc. No. 12) is **DENIED**.


Dated:  July 24, 2006                          s/Donovan W. Frank
                                               DONOVAN W. FRANK
                                               Judge of United States District Court